think that the court is committed to the doctrine that a party suing for penalties can recover but for one violation or one default prior to the commencement of the action," etc.

The position thus taken by the Court of Appeals under a statute which prescribed a penalty for "any refusal" has been reaffirmed in the recent cases of Griffin v. Interurban Street Railway Co. and Scudder v. Same, 179 N. Y. 438, 72 N. E. 513, which were brought to recover penalties against said railway company for a refusal to give transfers under section 104 of the railroad law (Laws 1892, p. 1406, c. 676), which prescribed a penalty for "every refusal." While, therefore, the question in the cases last referred to arose under a statute different from the one applicable to the case at bar, the reasons there assigned apply with equal force here, the words of the two statutes being identical, and the plaintiff in the present case having admitted that his several demands for the examination of the stockbook were for the purpose of getting a certain information sought once for all.

In each of the above-entitled actions, therefore, the judgment must be modified and reduced so as to permit a recovery for one penalty only, with costs to the plaintiff in the court below, but without costs of this appeal to either party. All concur.

---

(99 App. Div. 94.)

### SMITH v. BOSTON & A. R. CO. et al.

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. EMINENT DOMAIN—DAMAGES FOR TAKING—ORDER OF RAILROAD COMMISSIONERS—EFFECT.

The Railroad Commissioners have no power to determine whether a town shall be liable to an abutter upon a highway for damages by reason of a change of grade thereof, and an order assuming to make such determination is void, and is not validated by being affirmed by the courts.

2. HIGHWAYS—CHANGE OF GRADE—LIABILITY OF TOWN.

Laws 1903, p. 1396, c. 610, amending Laws 1890, p. 1193, c. 568, §§ 83, 84, and providing for damages for the change of grade in any town in which a highway is repaired, graded, and macadamized from curb to curb, refers to those highways upon which state roads are being built, in which case the town is made liable for a change of grade to the detriment of the landowner, but may offset the benefit which he receives by reason of the improved highway, and it does not make towns responsible for a change of grade in other cases, but the rule in them remains the same as at common law, viz., that an abutter has no claim for damages against a municipality for a change in the grade of a highway.

3. STATUTES—CONSTRUCTION—DEROGATION OF COMMON LAW.

A statute creating a liability where otherwise none would exist, or increasing a common-law liability, or even a remedial statute giving a remedy against a party who would not otherwise be liable, will be strictly construed.

4. MUNICIPAL CORPORATIONS—HIGHWAYS—LIABILITY FOR CHANGE OF GRADE.

The Railroad Law, Laws 1890, c. 565, § 63 (Heydecker's Gen. Laws, p. 3291, c. 39), providing that a municipal corporation may acquire by purchase or condemnation lands, rights, or easements necessary for the purpose of abolishing grade crossings, does not impose upon a town a liability to pay an abutter damages resulting from a change of grade of a highway.

Houghton, J., dissenting.

Appeal from Special Term, Columbia County.

Action by Albert T. Smith, as trustee, against the Boston & Albany Railroad Company and others and the town of Kinderhook. From an interlocutory judgment overruling a demurrer to the complaint, defendant town appeals. Reversed.

The action is brought to recover damages to the plaintiff's property by reason of the changing of the grade of a highway for the purpose of making an underpass under the Boston & Albany Railroad. Plaintiff's property adjoins said railroad, and abuts upon the highway, which was lowered about 10 feet. This highway was lowered under the "Grade Crossing Act," so called, reproduced in sections 62–69 of the Railroad Law, being chapter 565 of the Laws of 1890, Heydecker's Gen. Laws, pp. 3291–3296, c. 39. In the complaint it is alleged that this work was done pursuant to an order of the Railroad Commissioners authorizing and directing the defendants to purchase said land, "and directing such defendants to make an underground crossing under the Boston & Albany Railroad, which is leased and managed by the defendant the New York Central & Hudson River Railroad, where the Boston & Albany Railroad crosses Chatam street, Niverville, town of Kinderhook, aforesaid; and such order required the destruction and removal of the highway in front of plaintiff's manufacturing plant at Niverville, aforesaid, upon the payment by the defendants of the value therefor. Such order was affirmed by the Court of Appeals prior to January, 1903. The proceeding taken as aforesaid was commenced by the defendant's railroad, and it was defended by the defendant town of Kinderhook. On or about June 1, 1903, the defendants began such change under the direction of such order." While the complaint alleges the destruction of the highway, it defines such destruction as the removal of such highway to the depth of about 10 feet below plaintiff's buildings. The complaint further alleges the service of a verified notice of the claim upon the defendant the town of Kinderhook and upon the Boston & Albany Railroad Company and the New York Central Railroad Company, which were made codefendants. The defendants severally demurred upon the ground that facts were not stated sufficient to constitute a cause of action. The demurrers of the defendant railroad companies were both sustained, and the demurrer of the defendant town of Kinderhook was overruled. From this order overruling the demurrer the town of Kinderhook here appeals.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Farrar & Becker (Frank Becker, of counsel), for appellant.
E. R. Harder, for respondent.

SMITH, J. The complaint has been held good as against the defendant town, not by reason of any liability imposed by the statute, but solely because of the order of the Railroad Commissioners made under section 62 of the railroad act, in which order it was provided that the defendant town should pay plaintiff for his damage resulting from the change of grade. Such is the ground of liability as stated in the opinion of the learned trial judge. We are at a loss to understand, however, without either common-law or statute liability to pay for the injury which plaintiff has suffered, how such liability can be imposed upon defendant town by an order of the Railroad Commissioners. By no statute are they given power to determine whether a town shall be made liable to an abutter upon a highway in a town for damages by reason of the change of grade thereof. Such part of their order, therefore, as assumes to make such determination, is made without authority, and is void. The affirmance of that order by the Appellate Divi-

sion and by the Court of Appeals means only the affirmance of such part of the order as is within their jurisdiction to make.

Upon this appeal the respondent does not seek to sustain this order upon the ground stated by the learned trial judge. His argument seems to be based upon the claim that by sections 83 and 84 of the highway law (Laws 1890, p. 1193, c. 568), as amended by chapter 610, p. 1396, of the Laws of 1903, as well as by the provisions of the grade crossing act itself, a liability is imposed upon the defendant town to pay for the damages suffered by the plaintiff. I do not understand that any liability is claimed to have been imposed by these sections of the highway law prior to the amendment·of 1903. The amendment of 1903 provides for damages for the change "of grade in any town in which a highway has been or shall be hereafter repaired, graded, and macadamized from curb to curb by the authorities of the town. * * *" There is no pretense that this highway has been repaired, graded, "and macadamized." The statute apparently refers to those highways upon which the state roads are being built, in which case, while the town is made liable for the change of grade to the detriment of the landowner, against such liability may be offset the benefit which he receives by reason of the improved highway.

There is abundant authority for the proposition that at common law an abutter has no claim for damages against a municipality for a change in the grade of a highway. Radcliff's Executors v. The Mayor, etc., of Brooklyn, 4 N. Y. 195, 53 Am. Dec. 357; Conklin v. N. Y., Ont. & Western R. R. Co., 102 N. Y. 107, 6 N. E. 663; Rauenstein v. N. Y., Lackawanna & Western R. R. Co., 136 N. Y. 528, 32 N. E. 1047, 18 L. R. A. 768. And this rule is held even though the change of grade be so radical as to render difficult, or even to cut off, access to his property. Dillon on Municipal Corporations, § 990. That this rule in many cases has worked hardships is admitted by the authorities. In cities and incorporated villages the rule has been changed by statute. Such municipal corporations have been made liable for injuries resulting from a change of grade. For injuries suffered by an abutter in a town, however, no remedy has been given by statute, except in the single case heretofore referred to by the act of 1903. This assertion is challenged by some of my colleagues ·who read from the sections of the railroad law regulating grade crossings and their abolishment the imposition of such liability upon the town. Am I right, then, in this assertion?

In Sutherland on Statutory Construction, section 371 in part reads:

"If a statute creates a liability where otherwise none would exist, or increases a common-law liability, it will be strictly construed. A statute, even when it is remedial, must be followed with strictness where it gives a remedy against a party who would not otherwise be liable."

Read in the light of this rule of construction, what provision is there in these sections of the railroad law which imposes a liability upon a town to pay an abutter for damages from a change

of grade? If anywhere, it must be found in section 63 of the railroad law. That section reads as follows:

"A municipal corporation in which a highway crossing is located may, with the approval of the railroad company, acquire by purchase any lands, rights or easements necessary or required for the purpose of carrying out the provisions of sections 60, 61 and 62 of this act; but if unable to do so, shall acquire such lands, rights or easements by condemnation, either under the condemnation law or under the provisions of the charter of such municipal corporation. The railroad company shall have notice of any such proceeding and the right to be heard therein."

But what rights or easements have been taken from the plaintiff in the changing of the grade of this street? If the plaintiff's property had been situated within a city or incorporated village, the plaintiff would be entitled to the right or easement of the highway as it was then located, and the change of the grade to his injury would be the taking from him of a right or easement for which the municipality must, under the statute, pay him. There never has existed any right or easement, in an abutter outside of a city or incorporated village, in the street at any existing grade. His right or easement has always been subject to the right of the municipality, for the public good, to change the grade of the street without compensation to him. No new right or easement in an abutter in a town is declared or given by this statute. The intended creation by this statute of new rights to be condemned would be a violent inference, which, under the rule of statutory construction cited, would be wholly without warrant. The natural interpretation of the statute is that the municipality must purchase or condemn any rights of an abutter already secured by common law or statute. Had the change been made by the town officers before the enactment of these provisions of the railroad law, it will not for a moment be claimed that the town would become liable for the damages which the plaintiff has suffered. I find no phrase in the statute which either directly or by necessary implication imposes upon the town any further liability for a change made under the statute than for a change if made prior to the enactment thereof.

The case of Torge v. The Village of Salamanca, 176 N. Y. 324, 68 N. E. 626, is pressed upon our attention as indicating a different interpretation of this statute. That was a case, however, which arose upon the rights of an abutter in an incorporated village, and the question there discussed was simply a question as to the remedy to be pursued. The question before us here was not there before the court.

I recommend, therefore, that the interlocutory judgment be reversed, and the defendant's demurrer be sustained.

Interlocutory judgment reversed, with costs, and demurrer sustained, with costs. All concur, excepting HOUGHTON, J., dissenting in opinion.

HOUGHTON, J. (dissenting). I concur in the proposition that the plaintiff cannot sustain his complaint under the provisions of the highway law (chapter 610, p. 1396, Laws 1903), but I cannot

assent to the conclusion reached by the court that chapter 754, p. 794, of the Laws of 1897 (incorporated in the railroad law as sections 60–69), known as the "Grade Crossing Act," does not give compensation to abutting owners for change of grade of highways and streets necessary to the construction of an underneath or overhead railway crossing. Notwithstanding the ambiguous language of the act, I think it can be fairly said that it was the intention of the Legislature to provide for payment by the municipality to abutting owners of the damages which they might sustain because of such change. While the object of the act was to secure greater safety to the public by the abolishment of crossings of railways at grade, the necessity for and the propriety of the large expenditure incident thereto in any particular case was left to the determination of the Railroad Commissioners. The Legislature was aware, from laws previously enacted by it, that for any change of grade of streets in cities and villages the municipality must pay the damages sustained by abutting owners. It must also be presumed to have been cognizant of the holdings of the courts that an abutting owner is not entitled to any compensation for the lawful change of grade of a street or highway in front of his premises unless it is given him by some statutory provision, even though he may own to the center of the highway. Conklin v. N. Y., O. & W. R. R. Co., 102 N. Y. 107, 6 N. E. 663; Rauenstein v. N. Y., L. & W. R. R. Co., 136 N. Y. 533, 32 N. E. 1047, 18 L. R. A. 768. In view of the provision of the act that the state should pay one-quarter of the expense, and only $100,000 in any one year should be appropriated therefor, the Legislature could not have expected that the Railroad Commissioners would direct a change of grade except at congested points of travel, where crossing upon the surface of the tracks had become most dangerous. This might occur in some measure in country towns as well as in cities and villages. Wherever it did occur in country towns, it was likely to be brought about because of the establishment of settlements and the building of houses and factories adjacent to the highway. I do not think the Legislature intended that the abutting owner in a city or village should be allowed compensation for the damages sustained by him in raising or lowering the street, and to deny like damages to an abutting owner upon a country highway. In all the cases in which an abutting owner has been denied the right to damages for the change of grade of a street or highway the harshness of the rule has been recognized, and it seems to me that any statute which apparently seeks to remedy it should be construed with fair liberality. The conceding of damages to abutting owners for change of grade has been a subject of legislative growth. City charters from time to time relaxed the rule, and finally abutting owners in villages were accorded damages, and now abutting owners in all cities and villages are given the right to recover such damages as they may sustain by reason of the change of an established grade of a street. And it seems to me that this right has now been accorded to an abutting owner upon a country highway, where a change of grade is made necessary by reason of the au-

thorized change of a grade railroad crossing to one underneath or overhead. Although not applicable to plaintiff's situation, chapter 610, p. 1396, of the Laws of 1903, which provides that damages may be recovered by an abutting owner for change of grade in the macadamizing of country highways, may be cited as casting some light upon legislative growth and intent.

An analysis of the act strengthens this construction. The general provisions with respect to existing crossings at grade are that upon petition, or upon their own motion in case of necessity, the Railroad Commissioners may, after notice "to the owners of the lands adjoining such crossing and adjoining that part of the highway to be changed in grade," and hearing, order the crossing of the highway changed to overhead or underneath, in which case the railroad company shall do the work under the supervision of the commission, and pay one-half the total expense thereof, and the municipality in which the crossing is located shall procure the lands, rights, and easements necessary therefor, and pay one-quarter of the total cost, the state at large paying the remaining quarter. By section 63, c. 754, p. 797, Laws 1897, as amended by Laws 1899, c. 226, p. 409, the municipality is given power to acquire by purchase such lands, rights, or easements as may be necessary, and in case of inability to do so it is directed to acquire the same by condemnation, either under the general condemnation law or under such provisions of its charter as may apply. And by section 65, c. 754, p. 797, Laws 1897, as amended by Laws 1898, p. 1253, c. 520, and Laws 1900, c. 517, p. 1214, it is provided that the expense of construction shall be paid primarily by the railroad company, and the expense of acquiring additional lands, rights, or easements shall be paid primarily by the municipal corporation wherein such highway crossings are located. By section 67a, Laws 1899, c. 541, as amended Laws 1902, c. 198, p. 501, the municipality is given power to borrow moneys for such purpose, as well as to pay its final proportionate part.

It will be observed that no step is to be taken by the Railroad Commissioners in ordering an underneath or overhead crossing, either upon petition or upon their own motion, without notice, not only to the railroad company and the municipality, but to owners adjoining "that part of the highway to be changed in grade" and "persons interested." Such persons are given the right to appear before the commission in person or by counsel, and the right to appeal from its decision. These provisions indicate that the Legislature regarded the abutting owner as different from the ordinary citizen interested in an improvement in his town. The right to have notice and to be heard and to appeal from an adverse decision shows, it seems to me, that the Legislature assumed the abutting owner to be a person interested in the destruction of his property by the raising or lowering of the highway in front of his premises, and as one for whom they had provided compensation which he was finally to receive from the municipality. If the act be not construed to give damages to an abutting owner for the change of grade, the provisions of section 63 with respect to ac-

quiring rights or easements by purchase or condemnation under the general condemnation law or under the provisions of the charter of a municipality are meaningless. If all that was intended was the acquiring of land to widen the existing highway, or the discontinuance of the old highway and the laying out of a new one, the highway law (Laws 1890, pp. 1192–1195, c. 568, §§ 80–92) contained ample provision to accomplish that object. Under that law the railroad company or any person assessable for highway labor could apply to the highway commissioner and to the County Court for the appointment of commissioners to determine the necessity of the highway proposed to be laid out or altered, or the uselessness of the one proposed to be discontinued, and to assess the damages therefor. Highways have thus been laid out, altered, or discontinued for many years, and the proceeding is quite simple, compared with that under the general condemnation law. If it were not the intention of the Legislature to permit abutting owners to recover damages for their easements and rights as such, growing out of the change of grade of the highway adjacent to their lands, it is difficult to conceive why the Legislature directed that the municipality should institute condemnation proceedings under the general condemnation law. In addition, it seems to me that the decision in the matter of Torge v. The Village of Salamanca, 176 N. Y. 324, 68 N. E. 626, is authority for construing the grade crossing act as giving damages to abutting owners for change of grade in the construction of underneath or overhead crossings. While the question was not directly before the court, still both the Court of Appeals and the Appellate Division, in their discussion of the questions involved, assumed that the act provided for such damages.

I do not consider whether or not the demurrer to the plaintiff's complaint should have been sustained on the ground that no action would lie against the defendant town, or because the complaint fails to allege that the plaintiff filed his claim for damages with the Board of Railroad Commissioners within six months after completion of the work of changing the grade. I have confined myself to the giving of reasons why I do not concur in the conclusion of the court that the statute fails to give damages to abutting owners arising from the change of grade.

I dissent from a reversal upon the grounds stated in the prevailing opinion.